Case number 23-3178, Brian Ames v. Frank LaRose. Oral argument not to exceed 15 minutes per side. Mr. Miller Novak for the appellant. Good morning, counsel for appellant may proceed. May it please the court, my name is Matt Miller Novak, I'm here on behalf of plaintiff appellant Brian Ames, I'd like to rebut 4 minutes for, I'd like to reserve 4 minutes for rebuttal. Thank you so much. Your honors, the lower court erred in incorrectly determining that Brian Ames did not have standing for three primary reasons. The first, that invalidating the statute is the only means available to actually provide the redressability that Mr. Ames seeks. Number two, the associational standing to challenge state interference as part of leadership should not be solely vested in the leadership that is benefiting from that interference. And finally, in this circumstance a member's standing is concurrent with the association itself but it is not dependent on the association's standing. Before I kind of get, I think, into the argument, I'd like to maybe fine point, I think, the issue when I saw the briefing unfold. I think what we're really dealing with today is whether a member of an association, a political party, has standing to challenge the interference with the internal governance of that association when the association bylaws comply with the statute. And we argue that a member does have standing that exists independent in some circumstances from the association standing itself, primarily citing the 9th Circuit opinion and rationale and the Democratic Party, or Central Committee v. Ewe, which is the 9th Circuit case that we have cited frequently within our briefing. The state seems to primarily rely upon the 4th Circuit's opinions in both, I think, Marshall and Miller, which I'll address and I will distinguish as I go on today. I think a big factual issue, I don't want to recite the facts, I'm sure you've read the briefs, but I think a big factual distinguishing characteristic between the 9th Circuit's and what happens ultimately in Ewe, both at the 9th Circuit as well as the Supreme Court, as opposed to the 4th Circuit cases that the state primarily relies upon, is that we're talking about choosing the leadership internally of the party itself. Who leads the party? Who makes the decisions for the party? We're not talking about a primary or something later on. We're talking about candidacy or voting for a candidate that ultimately will serve in the public office and lead the public generally. The consequences to govern people of all parties and all associations as opposed to an internal governance decision of picking your own leadership within your party. And I think that factual distinction has a lot of significance in this case when we talk about standing and the harm that is created as well as redressability. So I'd like to start on the first point, is that the redressability at issue or the harm that's created here is about choosing who can lead a political party. And I know we're here to talk about standing, but I don't believe that we can really do that without talking about the constitutional harm at stake. This statute essentially forces every association to choose one man and one woman from each district of the state central committee, thus forcing every single political party in the state of Ohio. It demands a gender quota of 50% men and 50% women. What if the parties wanted to do that? If the parties themselves wanted to do that, we would see that because the bylaws would precede the statute. The reality is here, every... Precede? Is that what you said? Yes. It would be before the statute. I mean, how's that dispositive? I mean, if they want to do it now and they didn't do it 20 years ago, what difference does that make? I mean, it may be evidence that that's been their desire all along, but it's hard to say that that's really going to be that important, I think. Well, we never got to the discovery phase in terms of that issue on summary judgment because the state never filed a summary judgment motion. This is really a motion to dismiss at the pleading stage. Yeah. So in your pleadings, we have to assure ourselves about the redressability problem that you're talking about. Where in your pleadings do you say that the party itself is likely to change this rule when, you know, if the court were to invalidate the statute? Well, Your Honor, I'm taking the position today that that is not necessary for us to have standing, and I can explain that. Can it issue an order and we're supposed to invalidate the law even if nothing will change and the party will keep the one-man-one-road rule, the term limit rules, like even if that would never change? Well, it gives the members the ability to challenge the leadership on those issues. So if I could actually point to San Francisco County Democratic Central Committee v. OO, that specific question was addressed. But isn't the party there? What's that, Your Honor? Isn't the party a defendant in that case? Yes, factually, but... Why isn't the party a defendant in this case? No, the party was not a defendant. The party was a plaintiff in that case, Your Honor. Well, the party was a party. The party was a party, yes. The party isn't a party here. That's correct. Why not? Well, because it's not necessary. And actually, OO notes that. So what the state as well as the lower court held is that Mr. Ames didn't have standing because the party was not involved. And both the lower court as well as the state cited the OO case to suggest that the Ninth Circuit came to the determination that the individual members had standing because of the parties. And that's not the truth. The reality is of what that holding, factually, the party was involved. But the Ninth Circuit expressly stated that even if the party itself didn't have standing, the members could still have standing. Because the redressability, so what the case argued is plaintiffs, the state argued that the plaintiffs lacked standing because it did not show that the party central committee has adopted bylaws that conflict with the statute. And thus, would not obtain the effective relief from a judicial declaration the statutes were unconstitutional. When the Ninth Circuit rejected that argument, they said that the association's standing cannot hinge on adopting bylaws that conflict with statutes and then disregarding those bylaws in actual practice. Yeah, I think that's a good point, counsel. The Ninth Circuit certainly said, you know, the Ohio Republican Party here doesn't have to go through this kind of futile exercise of saying if the law were invalidated, we actually have these other bylaws. But in you, you had all these affidavits of members and leadership saying we would vote for that, we would want to change this. There was something, at least, that the court could hold on to to say something, you know, might change here. Where in your complaint do we have that? We don't. And I cannot suggest we do, but I can suggest that the law doesn't require it. And if I can bring the two points that the Ninth Circuit made directly on that issue, Your Honor, I think it addresses your question perfectly. The first thing that the Ninth Circuit said on that issue is that even if the state was correct in asserting that the state central committees have no standing to challenge the statute, the state has still failed to show that plaintiffs do not have standing to bring suit for the infringement of their First Amendment rights. And it actually puts the word there in italics, and I think that's important because the Ninth Circuit is emphasizing that the individual member's rights and their First Amendment rights of association in that circumstance can be distinct from the association as a  And it goes a little further than that, and it directly addresses it much more clear. And that was actually my second point about regarding and investing the sole discretion in the party leadership it says. And the Ninth Circuit wrote, the state's argument that only bodies capable of challenging the statutes prescribing the membership in terms of the state central committees are the state central committees themselves, turns the associational interest at stake on its head. They continue that the association rights of political parties and their members to choose their own governing body would be of little avail if a statute imposing a state created in the selected governing body could only be challenged by the governing body itself. In other words, what the Ninth Circuit is saying is that if we invest the sole discretion of an association to challenge laws that interfere with associational leadership and the leadership itself, it deprives the members of true associational relationship with that party. And I know it's going to sound like an extreme example, but let's say a political party's members were 95% Caucasian and the state passed a law saying that only you had to choose a Caucasian male and a Caucasian female. And the only representation, there's only 5% representation of minorities in that political party. What real ability would they have to challenge that statute and to freely associate with that association if the 95% that makes up that political party completely is the one benefiting from the law that placed them in power? By having that holding and making the members' associational standing completely dependent on leadership that benefits from interfering statutes. We would allow the state... If it's hypothetical, wouldn't they also just sue the party? And we have cases saying that in those contexts they can and indeed have. Well, I don't believe so because a party doesn't necessarily have... Like a party is not a government. It's not a government entity. So can you really sue a... Like can you necessarily sue a party itself for 14th Amendment violations? Can you sue a party itself for First Amendment violations? You have in some contexts and the Supreme Court has said in some contexts you indeed can in its role in discrimination. But you haven't sued the party here so it's a little bit neither here nor there as far as I understand. Can I ask, you make a... Your points about association and the members having these rights to association seem very much to me to go to an injury in fact prong of standing and maybe are quite strong on that. It's the redressability prong that the lower court here focused on. Even if you have an injury that you're not getting to vote for who you want to vote for and your rights there, what is the redressability that we as a court could order? Well, I think it's the freedom of choice, Your Honor. And I think that is extremely important. Because right now as the Ninth Circuit stated, to create bylaws or for the party to even bother to adopt bylaws that conflict with the statute would be completely meaningless. So for instance, if the Republican Party tomorrow was to say that it doesn't matter what gender it is, you can vote for two men, two women, it doesn't really matter. Well, when they show up at the county board of elections to turn in their petitions, it's going to matter. When the voters of that association go to their local high school and they get that ballot and they go in that little booth, it's going to matter. Because the reality is that the state itself and the secretary of state and the board of elections, what their mandates are is to comply with the statute, not the association's goals. So you don't even have a meaningful choice as an association while a statute is in place, which is what the Ninth Circuit stated. Because creating bylaws that don't comply with the statute is meaningless because you're still going to have to behave in violation of your own bylaws to comply with the law and not to falsify petitions. Okay, counsel, thank you. Thank you. You'll have your four minutes rebuttal. Thank you, your honor. Good morning. Good morning.  May it please the court, my name is Andrew McCartney and I represent the secretary of state in this appeal. Judge Blumkopf, I'd like to start with your question that many of my friend on the other side's arguments go actually to injury in fact, not the basis for the district court's holding, which is causation and redressability. And the injury in fact question is more difficult. There's case law saying that it's unsettled whether a single ordinary non-leadership member of a political party has the right to bring the concrete injuries of the association and its collective membership. But the court doesn't need to reach that more complex question because as the district court out of Rhode Island in Connell, the Fourth Circuit in Marshall v. Meadows, and the district court here held these types of cases are straightforward on causation and redressability. Without any showing in the record of disagreement from the party with its own internal bylaws or in this case the permanent rules. Those permanent rules do, as the district court found, break the causal chain between Ames asserted injuries and the state statute. And they also prevent, as your honor pointed out, an injunction of the state statute from being able to redress the asserted injuries. And I think here the best case is the Fourth Circuit's decision in Marshall v. Meadows because in that case the court held, again on causation and redressability, that a group of plaintiffs lacked standing to challenge Virginia's open primary law because at that time the Virginia Republican Party, through a resolution, had also chosen an open primary. The court looked to, and I think this is important for the analysis, the court looks to whether there were official party documents such as the Virginia Republican Party plan or other official party documents showing that the party disagreed with the open primary system or only adopted the open primary system through its resolution because of the state statute. Finding none of that evidence in the record, the court very easily held that causation and redressability were lacking. Contrast that with about ten years later, the Fourth Circuit in Miller v. Brown addressed a situation and held that a different group of plaintiffs did in fact have standing. Again, not because of the difference in the class of plaintiffs, but because causation and redressability were met. The same Virginia primary law was still on the books, but the party, the Virginia Republican Party, had recently amended its plan to move towards a closed primary system, clearly indicating disagreement with the open primary statute. And thus the court found that standing was present there in contrast to its previous decision in Marshall v. Meadows. How would you respond to your friend's argument that those cases shouldn't direct us here because they're not about the selection of party leadership itself? So, two responses, Your Honor. First, the Connell case from the District of Rhode Island does deal with internal party governance decisions, so for that proposition it's maybe even a little bit more on point than the Fourth Circuit's decision. But I actually think the Fourth Circuit's decisions are more important on the associational right, and thus this case is even easier because the associational right in the Fourth Circuit is really the right of the party to have a closed or open primary, and that gets to the core associational right. Here, there's no such core associational right at issue. I guess a third point is just that while my friend did mention that distinction, I'm not aware, I don't think either side cited any case that stands for the proposition that there's a meaningful causation or redressability distinction that can be made based on whether the internal governance decision relates to internal party leaders or whether it relates to a primary being open or closed. A couple other points, my friend on the other side mentioned DICTA from the Ninth Circuit on that point for the proposition that we shouldn't have to wait for the leaders of a political party to gain momentum. It should just be the individual members that can bring those associational rights. That is DICTA in the Ninth Circuit's decision, and as Your Honor pointed out in questions, all of the cases that my friend cites are easily distinguishable in the facts. In the Ninth Circuit decision, there are actually uncontroverted affidavits from each of the party representatives that if the California Election Code provisions were joined, the party's state and central committees would do the opposite. Also, in the Ninth Circuit case, plaintiffs included eight different state and county central committees, including representation from the Republican, Democratic, and Libertarian parties. Very different from this case. Again, I'm not aware of any case where a single ordinary non-leadership member of a party has standing in these types of circumstances. Tashjian, which he relies on from the U.S. Supreme Court, is easily distinguishable. The Secretary is not arguing for a rule that you can only have standing if the party adopts a directly contrary rule, but that was actually the fact in Tashjian where the Connecticut Republican Party had adopted a party rule that was directly contrary with Connecticut's closed primary law. And then a third case that I already mentioned is the Miller v. Brown case. Again, there's clear evidence through the amendment of the party plan, which is an official party document, that there was disagreement. That's why I think that the District Court's key holding gets the rule right, which is probably best, again, from the Fourth Circuit's jurisprudence, which is that where there's no evidence in the record of party disagreement with the party's own bylaws, that standing is lacking under causation and redressability. Two brief points that were made in my friend on the other side's reply brief. There's a citation to the permanent rules and some language about aspects of the permanent rules not being inconsistent with state law. My friend cites the wrong section. He's quoting language from Article 2, Section 1, which relates to contested elections of committee member officers. The relevant section of the permanent rules is Article 1, Section 1, which makes no reference to the challenged state statute here and which provides the two provisions that he's challenging. Regardless, that is definitely not evidence of party disagreement with the party's own permanent rules. One other point just on discovery. There was some suggestion in a footnote in the opening brief and then in the reply brief in the main text that Mr. Ames lacked sufficient time for discovery. Really, that's not the case. I think Mr. Ames' position from the get-go was that no discovery was needed. He quickly moved for a motion for summary judgment on his Freedom of Association claim before any discovery had taken place. And he, in fact, conducted no discovery despite the fact that the Secretary made a factual attack on jurisdiction and attached the permanent rules in early August of 2022. And the district court didn't issue its order until late February 2023, almost seven months later. Again, during that time, there's no 30B6 deposition taken. And so, really, he had adequate time for discovery in this case. And again, it's up on a factual challenge to subject matter jurisdiction. Would you address your friend's hypothetical about racial discrimination in the party selection process of its leaders that he hypothesizes could happen if we weren't to find standing here? Sure. I think, as Your Honor pointed out, well, we didn't cite cases in our brief for the proposition that there could be state action in those circumstances. Your Honor seems aware of a body of case law, though, where that would be the case. I think in those type of egregious circumstances, one, of course, we strongly dispute that characterization on the merits, but I get that's a separate issue. But just in terms of standing and the ability to bring a lawsuit, again, it sounds like that could be done in those circumstances. And also, I think, and this would apply in both that hypothetical and our case, politics is messy and it does involve different movements within parties, different individuals using the leadership and influence skills that they have to bring about change at the local level. So even on a lower standard, my friend mentioned, again, that we shouldn't have to wait until the party itself makes a decision. But even on the facts here on that lower threshold, there's no evidence in the record of a grassroots movement among ordinary, non-leadership members of the Ohio Republican Party against either the gender diversity or the term limit provisions that he's challenging here. All right. Thank you, Mr. McCarty. Any further questions? No. All right. Thank you. Rebuttal? I think before I conclude, I do want to address a couple of things my friend said here. The first is that there's no case law necessarily distinguishing the facts between something that happens at a primary election as opposed to regulations of the internal politics. But actually, I think one of the cases that the state cites, which is Myozawa versus City of Cincinnati, which was 825 Federal Supplement, 816. In that case, the Southern District did, in its analysis, denying standing. The plaintiff in that case cited the U case out of the Supreme Court in Ninth Circuit. And in the court's opinion, it actually distinguishes that scenario. On page 821, the Southern District distinguished its opinions because it was talking about term limits on city council as opposed to attacking regulations and interference with term limits internally in a party. So that was something that the Southern District's analysis on standing addressed was the distinction of facts between city council term limits as opposed to the term limits that were being interfered with within the party's leadership itself. So there is some case law supporting a distinction in that reality. The other thing I would like to address that my friend has mentioned is that he's calling a lot of the things that I've cited within the Ninth Circuit District Court of Appeals opinion as dicta. I don't believe that's an accurate depiction. I believe it's reasoning. And I think there's a difference between reasoning and dicta. And the reason I say that is the question that was being answered when the Ninth Circuit made the statements that we cited earlier was whether or not the individual members had standing. And the reasoning that it took to get there was to talk about why they had standing. And when they talked about that, they talked about how that standing in some ways was independent and distinct from the association and the party's standing itself. That's not really dicta because you're talking about the reasons you're coming to a conclusion and the question you're being asked to answer and providing that answer and the reasons you provide the answer falls more into the camp of holding and reasoning as it does dicta. Dicta is when a court mentions a scenario that it's not being asked to answer and provides some opinion or some hypothetical. And that was not really the issue in the Ninth Circuit's opinion in the Yu case. I think to really address the issue of addressability here, which I think is what our argument has been focused on, is we have these Fourth Circuit cases that the state is relying on heavily and we have this Ninth Circuit case that I am relying on heavily. And I think the circuit hasn't really answered the question itself whether or not a member can have standing in an association claim when the association is not challenging that statute. And I think if we follow the... You know, the state is asking this court to essentially follow the Fourth Circuit's take on it and I'm asking this court to follow the Ninth Circuit's take on it. And the Ninth Circuit's take on it is that the member's standing was not dependent on the association's standing or the challenge because the Ninth Circuit believed that it was not appropriate to necessarily solely vest the standing in the same leadership that was benefiting from the interference from the state. And our argument today is that is why this court should realize that the redressability must come from invalidating the statute because the leadership which is in charge of every political party in the state of Ohio essentially is benefiting from the unconstitutional interference from the state of Ohio. You still don't have to have anything in the record that shows that if we struck down this statute the party in Ohio would say wow, that's a relief, now we're going to change our rules? I don't believe you do, Your Honor, because I think it's about the meaningfulness of choice because why would a party necessarily make the decision if it doesn't have to make the decision to have bylaws that conflict with the statute when that conflicting thing would be... We need to have a little evidence on? You're just sort of saying why would we speculate about this? Well, because I think that the members itself, there's two interests at stake. There's the party's interest and there's also the members of that party's interest and I think they are two separate distinct interests at certain points and our argument is that this is that point when you have leadership that is benefiting from an interference that empowers them to be the leadership, what real interest do they have to challenge that statute necessarily? In a sense, it's almost a conflict between their own interest and the interest of some of the membership of that association that is being interfered with. All right, Mr. Miller and Novak, you're out of time. Any further questions? All right, I believe that concludes the oral argument docket for today.